**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------
SHIVA STEIN,

        Plaintiff,

v.

LADENBURG THALMANN FINANCIAL SERVICES INC., HENRY C. BEINSTEIN, GLENN C. DAVIS, BRIAN S. GENSON, DR. RICHARD M. KRASNO, RICHARD J. LAMPEN, MICHAEL S. LIEBOWITZ, HOWARD M. LORBER, JACQUELINE M. SIMKIN, MARK ZEITCHICK, ADAM MALAMED,

        Defendants.
------------------------------------------------------------

Case No. _____

**COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

**JURY TRIAL DEMANDED**

Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against Ladenburg Thalmann Financial Services Inc. ("Ladenburg or the "Company"), the members Ladenburg's board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the proposed acquisition of Ladenburg by affiliates of Advisor Group Holdings, Inc. ("Advisor Group").

2. Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading Preliminary Proxy Statement (the "Proxy Statement") to be filed on December 6, 2019 with the United States Securities & Exchange Commission ("SEC") and disseminated to Company stockholders. The Proxy Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Harvest Merger Sub, Inc. ("Merger Sub", a wholly owned subsidiary of Advisor Group, will be merged with and into the Company, with the Company continuing as the surviving corporation and a subsidiary of Advisor Group (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement") each Ladenburg common share issued and outstanding will be converted into the right to receive $3.50 per share in cash (the "Merger Consideration").

3. The consideration Ladenburg stockholders stand to receive in connection with the Proposed Transaction and the process by which Defendants propose to consummate the Proposed Transaction are fundamentally unfair to Plaintiff and the other common stockholders of the Company. Defendants have now asked Ladenburg's stockholders to support the Proposed Transaction in exchange for inadequate consideration based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy Statement contains materially incomplete and misleading information concerning, among other things, (i) Ladenburg's financial projections, relied upon by the Company's financial advisor, Jefferies LLC ("Jefferies") in its financial analyses; and (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Jefferies. The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a)

of the Exchange Act as Ladenburg stockholders need such information in order to cast a fully-informed vote in connection with the Proposed Transaction.

4. It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Ladenburg's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice. "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1390, 1315 (9th Cir. 1985). "[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in ***any federal district court.***" *Id.* at 1316 (emphasis added).

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Defendants are found or are inhabitants or transact business in this District. Ladenburg maintains its Ladenburg Thalmann & Co. Inc. headquarters in New York, New York, and Ladenburg hired its financial advisor, Jefferies, who is headquartered in this District. Further, the stockholder vote will be held in New York, New York, rendering venue in this District appropriate.

## PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of Ladenburg common stock and has held such stock since prior to the wrongs complained of herein.

10. Individual Defendant Henry C. Beinstein has served as a member of the Board since 2011.

11. Individual Defendant Glenn C. Davis has served as a member of the Board since 2018.

12. Individual Defendant Brian S. Genson has served as a member of the Board since 2004.

13. Individual Defendant Dr. Richard M. Krasno has been the Lead Independent Director since 2014 and has served as a member of the Board since 2006.

14. Individual Defendant Richard J. Lampen has been the Company's Chief Executive Officer and President since 2006, and Chairman of the Board since 2018, and a member of the Board since 2002.

15. Individual Defendant Michael S. Liebowitz has served as a member of the Board since 2019.

16. Individual Defendant Howard M. Lorber has served as a member of the Board since 2001.

17. Individual Defendant Jacqueline M. Simkin has served as a member of the Board since 2011.

18. Individual Defendant Mark Zeitchick has served as a member of the Board since 1999.

19. Individual Defendant Adam Malamed is the Company's Executive Vice President and Chief Operating Officer and has served as a member of the Board since 2018.

20. Defendant Ladenburg is incorporated in Georgia and maintains its principal offices at 303 Peachtree Street, N.E. Atlanta, Georgia 30308. The Company's common stock trades on the New York Stock Exchange under the symbol "STI."

21. The defendants identified in paragraphs 10-19 are collectively referred to as the "Individual Defendants" or the "Board."

22. The defendants identified in paragraphs 10-20 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**A.    The Proposed Transaction Undervalues Ladenburg**

23. Ladenburg operates as a diversified financial services company in the United States. Its Independent Advisory and Brokerage Services segment offers advisory and securities brokerage services for clients, including advisor managed accounts, general securities, mutual funds, and variable and fixed annuities; brokerage support services, such as access to stock, bond, exchange-traded fund, and options execution; products comprising insurance, non-traded real estate investment trusts, and unit trusts; and research, compliance, supervision, accounting, and related services. This segment also provides asset management services; and trust administration of personal and retirement accounts, estate and financial planning, wealth management, and custody services. The company's Ladenburg segment offers investment

5

banking services consisting of corporate finance services, such as underwritten public, registered direct, and at-the-market offerings, as well as private investment in public equity and other private placements; and strategic and financial advisory services. This segment also provides investment research, sales and trading, and investment services, as well as administration, operation, securities transactions processing, and customer accounts services; and various asset management products and services, including asset management programs, investment consulting services, fund management, private investment management programs, retirement plan sponsor services, alternative investments, architect programs, and third-party advisory services. Its Insurance Brokerage segment delivers life insurance, fixed, and equity indexed annuities, as well as long-term care solutions to investment and insurance providers; and marketing strategies, product expertise, and back-office processing for fixed and equity-indexed annuities. Ladenburg was founded in 1876 and is headquartered in Miami, Florida.

24. On November 11, 2019, the Company and Advisor Group jointly announced the Proposed Transaction:

> PHOENIX, Nov. 11, 2019 /PRNewswire/ -- Advisor Group, one of the nation's largest networks of independent wealth management firms, and Ladenburg Thalmann Financial Services Inc. (NYSE American: LTS, LTS PrA, LTSL, LTSF, LTSK, LTSH) ("Ladenburg"), a publicly-traded diversified financial services company, today announced that both companies have entered into a definitive merger agreement to join the two companies.
>
> Under the terms of the transaction, Ladenburg has agreed to be acquired by Advisor Group through a cash merger, in which each outstanding share of Ladenburg's common stock will be converted into a cash payment of $3.50 per share. The total enterprise value of the transaction is approximately $1.3 billion, taking into account Ladenburg's common stock, preferred stock and outstanding debt. The definitive merger agreement and the transactions contemplated were unanimously approved by Ladenburg's Board of Directors.

The transaction, which is subject to customary closing conditions, including the approval of Ladenburg's shareholders, and receipt of required regulatory clearances and approvals, is expected to close in the first half of 2020.

Following the completion of this transaction, the expanded Advisor Group organization will continue to be led by its current CEO and President, Jamie Price. When the transaction is completed, Advisor Group's leadership team will include senior executives from both Advisor Group and Ladenburg. Ladenburg's firms will not be merged with Advisor Group's firms, reflecting both companies' commitment to a multi-brand network model.

Advisor Group's network of firms consists of FSC Securities Corporation, Royal Alliance Associates, SagePoint Financial and Woodbury Financial. Ladenburg's independent advisory and brokerage firms include Securities America, Triad Advisors, Investacorp, KMS Financial Services and Securities Service Network (SSN).

Additional Ladenburg subsidiaries include Highland Capital Brokerage, a leading insurance solutions brokerage; Premier Trust, a financial advisor-focused trust services company; and Ladenburg Thalmann & Co., a middle market investment bank. Each of these subsidiaries has played a role in delivering unique, value-add solutions to Ladenburg-affiliated financial advisors.

Ladenburg Thalmann Chairman, President and CEO Richard Lampen said, "This is a transaction that maximizes value for our shareholders, while positioning our financial advisors for continued growth and success. We have always been impressed with Advisor Group's platform, offerings and leadership. Advisor Group's CEO, Jamie Price, and his management team offer a mature shared services model and a demonstrated ability to innovate and invest in ways that help advisors grow. We are confident this transaction will help our advisors accelerate the growth of their businesses, while enabling them to benefit from the highly personalized service experience they have always enjoyed, under a very similar multi-custodial, multi-clearing and multi-brand structure."

Advisor Group President and CEO Jamie Price said, "This acquisition brings together the best of two industry leaders, to the benefit of the financial advisors we collectively serve. We believe that the investments necessary for competitively differentiated technology, practice management, products and service excellence

7

require a greater level of scale than either of our companies can achieve on a stand-alone basis. In fact, as our two organizations learned more about each other's platforms, it became obvious that our strengths rounded out each other's offerings, and combined, we will have one of the most comprehensive and best-in-class platforms for financial advisors in the industry. Equally important, Advisor Group and Ladenburg have a shared commitment to the flexibility of third-party clearing, together with maintaining a 'small firm feel' delivered through the distinct management teams and cultures of a multi-brand network model. In today's fast-consolidating marketplace, where advisors fear becoming just another number in the crowd, the more intimate service culture and sense of community that our multi-brand approach offers is increasingly in demand."

Milton Berlinski, Co-Founder and Managing Partner of Reverence Capital Partners, a leading financial services-focused private equity firm and majority equity owner of Advisor Group, said, "Ladenburg Thalmann and Advisor Group are highly complementary businesses, with nationwide footprints, technology capabilities and senior management talent that represent the best of what the wealth management industry has to offer for financial advisors and their clients. By combining these two firms, we have created one of the most robust platforms in the country to support advisors' growth, with the scale, resources and intellectual capital to position them for success, no matter their business model or client focus."

Giving Advisors the Best of the Best in Platforms, Tools and Expertise

Following the completion of this transaction, Advisor Group will continue to operate under a multi-brand network model of firms, enabling the delivery of industry-leading tools and expertise through distinct firms with unique brands that each offer a sense of community and personalized service for affiliated financial advisors.

Financial advisors affiliated with Ladenburg's subsidiary firms are expected to benefit from Advisor Group's recent investments in cutting-edge enterprise-level service offerings, including eQuipt, the firm's fully-digital client onboarding system; MyCMO, its personalized advisor marketing platform; MySuccessionPlan.com, its suite of bundled succession planning resources; and its integrated CyberGuard Program for cybersecurity.

For advisors affiliated with Advisor Group, the transaction brings access to Ladenburg Thalmann's industry-leading practice management capabilities, wealth management resources, advisor-client portal technologies and expanded national scale.

The two companies also feature strong cultural similarities, including a shared commitment to supporting greater diversity across the industry, including advancing career opportunities for women financial advisors and women executives, as evidenced by Advisor Group's Women Forward initiative and the Ladenburg Institute of Women & Finance.

Multi-Custodial, Multi-Clearing Approach Minimizes Disruption and Maximizes Flexibility; Positions Company for Future Leadership in RIA Segment

Upon the transaction's completion, Advisor Group will be one of the industry's leading providers of a multi-custodial, multi-clearing model that drives maximum choice and flexibility for financial advisors.

Because both Advisor Group and Ladenburg use Pershing and National Financial (part of Fidelity Custody & Clearing Solutions) as their largest clearing providers, no repapering of client accounts will be necessary in connection with this transaction and its closing.

As one of the largest multi-custodial and multi-clearing networks of firms in the country, the company will be even better positioned to redefine the RIA segment of the wealth management space. The combined company will be able to support all financial advisor business models, including the hybrid advisor doing both securities and advisory business, as well as the "investment advisor only" professional who is either utilizing a corporate RIA platform, or has an independent RIA.

Adam Malamed, Executive Vice President and Chief Operating Officer of Ladenburg, said, "The ongoing evolution of our industry validates the importance of Ladenburg and Advisor Group's respective roles as the leading innovators of the network model of firms approach within our industry. The appeal of bringing Ladenburg and Advisor Group together is driven in large part by our shared vision for driving a transformative and innovative approach to the wealth management space. For example, among the many advantages of our multi-custodial, multi-clearing capabilities are the expertise and leadership we can further build in

> the RIA space. The combination of Ladenburg and Advisor Group creates a unique offering for financial advisors who are primarily fee-based, or fee-only, whether they want to have their own RIA under a turnkey level of back and middle office support, or would prefer to do fee-only work through a corporate RIA, without having to also hold securities licenses on the brokerage side of our industry."
>
> Financial and Legal Advisors to the Transaction
>
> Jefferies LLC is acting as financial advisor to Ladenburg, with Sullivan & Cromwell LLP serving as Ladenburg's legal counsel. Eversheds Sutherland, Kirkland & Ellis LLP, and Greenberg Traurig LLP are serving as legal counsel to Advisor Group and Reverence Capital.
>
> Committed financing for this transaction has been provided by Bank of America, UBS Securities, Barclays, Deutsche Bank Securities and Goldman, Sachs & Co.

25. The Board has agreed to Proposed Transaction and it is therefore imperative that Ladenburg's stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.    The Materially Incomplete and Misleading Proxy Statement**

26. On December 9, 2019, Ladenburg and Advisor Group jointly filed the Proxy Statement with the SEC in connection with the Proposed Transaction. The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's

stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Material Omissions Regarding Financial Projections*

27. The Proxy Statement fails to provide material information concerning financial projections by Ladenburg management and relied upon by Jefferies in its analyses. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and the financial advisor. Proxy at 36-37. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that Ladenburg management provided to the Board and the financial advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." In re Netsmart Techs., Inc. S'holders Litig., 924 A.2d 171, 201-203 (Del. Ch. 2007).

28. For the Company Projections, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics Income Before Income Taxes and Adjusted EBITDA, but fails to provide line items used to calculate these metrics or a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a). Proxy Statement at 37.

29. When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their

corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

30. The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.

31. Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measure to the most comparable GAAP measure to make the non-GAAP metrics included in the Proxy Statement not misleading.

*Material Omissions Regarding Financial Analyses*

32. With respect to the *Selected Public Companies Analysis*, the Proxy Statement fails to disclose the individual multiples and financial benchmarking metrics for each company observed by Jefferies. Also omitted are the Company's total debt as of October 31, 2019 and parent company cash as of the same date.

33. With respect to the *Selected Transactions Analysis*, the Proxy Statement fails to disclose the individual transaction values, last 12 month revenue multiples observed for the selected transactions, and the Company's total debt as of October 31, 2019 and parent company cash as of the same date.

34. With respect to the *Discounted Cash Flor Analysis*, the Proxy Statement fails to disclose: (i) terminal values of the Company; (ii) the basis for choosing the range of adjusted EBITDA multiples of 7.0x to 9.0x; the basis of using a discount rate range of 11.5% to 12.50%.

35. In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

36. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

37. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

38. Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, amongst other things: the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

39. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

40. Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully. Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives and the Company's financial projections.

41. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

42. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

43. The Individual Defendants acted as controlling persons of Ladenburg within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of Ladenburg, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Ladenburg, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

44. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

45. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Ladenburg, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Proxy Statement.

46. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

47. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

48. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

49. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

A. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

B. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

C. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

D. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED: December 10, 2019  Respectfully submitted,

        **WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**

        By: */s/ Gloria Kui Melwani*
        Gloria Kui Melwani (GM5661)
        270 Madison Avenue
        New York, New York 10016
        Telephone: 212-545-4600
        Facsimile: 212-686-0114
        Email: melwani@whafh.com

*Attorneys for Plaintiff*